UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| STEPHANIE S. DARDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:07CV00031 ERW |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #21].

**I.    PROCEDURAL BACKGROUND**

Plaintiff Stephanie S. Darden ("Plaintiff") brought the pending action under 42 U.S.C. § 1983, seeking monetary damages and injunctive relief from seven initial defendants, stemming from an incident which occurred while she was incarcerated at the Women's Eastern Reception Diagnostic and Correctional Center ("WERDCC"). On August 10, 2007, this Court dismissed, without prejudice, Plaintiff's claims as to the Missouri Department of Corrections ("MDOC"), WERDCC, and Marilyn Hubert, under 28 U.S.C. § 1915(e)(2)(B). This Court also dismissed any claim of medical mistreatment in violation of the Eighth Amendment that Plaintiff asserted against Defendants Cindy Pruden, Angela Pearl, William Beall, and James Hurley (collectively "Defendants"). The Court did not, however, dismiss Plaintiff's failure to protect claim against these Defendants, leaving this claim as the sole issue still remaining before the Court.

## II. BACKGROUND FACTS[1]

On September 16, 2005, Plaintiff was sentenced to serve five years in the custody of MDOC, after she was convicted of three counts of armed criminal action and three counts of first degree assault. From September 22, 2005 to November 13, 2007, Plaintiff was incarcerated at WERDCC in Vandalia, Missouri. Plaintiff is currently incarcerated at the Chillicothe Correctional Center in Chillicothe, Missouri. Defendants Cyndi Pruden, Angela Pearl, James Hurley, and William Beall were employed by MDOC during the time period named in Plaintiff's Complaint. Defendants Pruden, Pearl, and Hurley are still employed by MDOC, while Defendant Beall is not.

Oliveri Jones, an inmate at WERDCC during the time Plaintiff was incarcerated at the facility, was housed in the facility's administrative segregation unit for a period of time prior to November 2006. Before her time in administrative segregation at WERDCC, Ms. Jones had, on six occasions, received conduct violation reports for spreading, throwing, or threatening to throw water, urine, or fecal matter on or at other inmates. Two of these occurrences took place at

---

[1] The Court's recitation of the facts is taken from the Statement of Uncontroverted Material Facts contained within the Memorandum of Law in Support of Defendants' Motion for Summary Judgment [doc. #22], and from a portion of the Statement of Uncontroverted Material Facts contained within Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [doc. #25]. In her Opposition Memorandum, Plaintiff accepted as true, and thereby admitted, all of the facts set forth by Defendants in their Statement of Uncontroverted Material Facts. *See* Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). In addition to this admission, Plaintiff included her own Statement of Uncontroverted Material Facts, however, the Court will only consider a portion of these facts. Three of the facts listed by Plaintiff (numbers 4-6) will not be considered because they do not include appropriate citations to the record. To demonstrate that a genuine issue of material fact exists, a plaintiff must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). Plaintiff has submitted neither an affidavit nor other evidence sufficient to create a genuine dispute with respect to these three facts.

WERDCC. Ms. Jones had also been in administrative segregation at an earlier date, and her institutional record contained at least two memoranda, from 2001 and 2002, written by personnel from WERDCC, noting, and recommending, that she not be released into the general prison population. In August 2006, Ms. Jones requested a transfer to the Chillicothe Correctional Center Administrative Segregation Unit, but her request was denied.[2]

On November 20, 2006, Ms. Jones was released from administrative segregation, pursuant to the recommendation of the Administrative Segregation Committee. The Committee decided to release Ms. Jones into the general population of WERDCC because she had shown responsible behavior and good adjustment in administrative segregation, and because she had not received any conduct violations for more than a year and a half (since April 11, 2005). In November 2006, at the time of Ms. Jones's release from administrative segregation into the general prison population, none of the Defendants were aware of any threats made by Ms. Jones against Plaintiff or any other offender at WERDCC. The Committee's recommendation was approved by Defendant Angela Pearl, the Assistant Superintendent at WERDCC.[3] Neither Defendant James Hurley, the

---

[2]In their Reply Memorandum in Support of Motion for Summary Judgment [doc. #27], Defendants object to the first, second, and seventh facts in Plaintiff's Statement of Uncontroverted Material Facts, which describe Oliveri Jones's request to transfer to the Chillicothe Correctional Center, her conduct violation reports, and the 2001 and 2002 personnel recommendations. Defendants argue that the documents supporting these statements are not admissible evidence, because they are not properly authenticated. While it is possible that the transfer request, conduct violation reports and memoranda are inadmissible hearsay, the Court finds it unnecessary to reach this conclusion, as Summary Judgment against Plaintiff is appropriate even with this additional evidence.

[3]In their Reply Memorandum in Support of Motion for Summary Judgment [doc. #27], Defendants object to the third fact in Plaintiff's Statement of Uncontroverted Material Facts, which states, "Defendant Pearl approved Offender Jones' release from administrative segregation into the general prison population, and placement in Plaintiff's room." Defendants argue that this statement is not admissible evidence, because it is not supported by a properly authenticated

3

Chief of Custody at WERDCC, nor Defendant William Beall, an Associate Superintendent at WERDCC, were involved in the decision to release Ms. Jones from administrative segregation.

On the morning of November 21, 2006, while Plaintiff was incarcerated at WERDCC, Oliveri Jones was moved into Plaintiff's cell. Plaintiff did not know Ms. Jones, nor had she ever heard Ms. Jones's name, prior to this new cell arrangement. Plaintiff had not declared Ms. Jones to be an enemy, nor had she requested protective custody prior to the incident that occurred on November 23, 2006. Further, Plaintiff did not make any complaints about being celled with Ms. Jones during the two days that they shared a cell before the incident occurred. Staff were available to Plaintiff to complain about Ms. Jones, but Ms. Jones had not done anything to give Plaintiff a reason to complain to the staff before the incident.

According to Plaintiff, at approximately 3:30 a.m. on November 23, 2006, Ms. Jones poured an empty peanut butter jar full of urine on Plaintiff's head while she was sleeping. Immediately after Plaintiff informed staff of the incident, Ms. Jones was placed in handcuffs and was removed from the cell. Plaintiff was escorted to medical and was seen by LPN Lisa Pettis within thirty minutes of the incident. After Ms. Pettis evaluated Plaintiff, she was escorted to administrative segregation for protective custody, where she was allowed to shower for as long as she needed. Plaintiff has never requested to see a doctor about the incident, and she has not received any physical injuries as a result of the incident.

Following the incident, Ms. Jones was given a conduct violation for assault, received disciplinary segregation, and was referred for prosecution. Ms. Jones was then sentenced to serve

---

document. The Court assumes that this objection was made in error, as the evidence provided to support the statement is one of Defendants' own exhibits and is accompanied by a sworn affidavit.

four years in MDOC custody after she pled guilty to the class D felony of endangering an offender in the Circuit Court of Audrain County, Missouri.

## III.　LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

A. <u>Eleventh Amendment</u>

Defendants allege that they are entitled to summary judgment as to Plaintiff's claim for money damages because the Eleventh Amendment bars such a claim. Specifically, they maintain that Plaintiff's Complaint does not specify whether they are being sued in their individual capacity, in addition to their official capacity. This is an important distinction because the Eleventh Amendment applies to lawsuits against public officials acting in their *official* capacity, but not to lawsuits against public officials acting in their *individual* capacity. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

The Eighth Circuit has established that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Murphy*, 127 F.3d at 754). Courts have long been instructed to construe pro se pleadings liberally, in a manner that "encompass[es] any allegation stating federal relief." *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976); *see also Haines v. Krener*, 404 U.S. 519, 520-21 (1972); *cf. Williams-Bey v. Kempker*, 192 Fed. Appx. 569, 571 (8th Cir. 2006). However, a "*pro se* pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced." *Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting). In this particular case, Plaintiff failed to specifically state in her Amended Complaint whether she was suing Defendants in their individual, as well as official capacities. Additionally, Plaintiff has not since demonstrated

an intent to sue Defendants in their individual capacity, by amending her complaint or otherwise. *See generally Williams-Bey*, 192 Fed. Appx. at 571 (finding that District Court erred by considering only official capacity claims when Plaintiff's second pro se complaint specified that he was suing Defendants in both their individual and official capacities). Thus, she is unable to pursue recovery from the Defendants in their individual capacities.[4]

Plaintiffs may seek injunctive relief in suits against state employees in their official capacity. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005). However, claims for monetary damages brought against state officers in their official capacities are barred "either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes." *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). In this case, Plaintiff is apparently seeking both injunctive and monetary relief from the Defendants. The Eleventh Amendment requires this Court to grant summary judgment for Defendants with respect to Plaintiff's claims for monetary damages against Defendants in their official capacities. Plaintiff's claims for injunctive relief against Defendants in their official capacities, on the other hand, are still viable.

B.  Injunctive Relief

With respect to Plaintiff's claims for injunctive relief, Defendants argue that the claims are now moot, because Plaintiff is no longer an inmate at WERDCC. "[A] prisoner's claim for

---

[4]Failure to specify that a plaintiff is seeking relief against the defendant in his or her individual capacity generally results in the dismissal of those claims *without* prejudice. In this case, however, the Court can dismiss the claims *with* prejudice, because, even if Plaintiff had properly sued Defendants in their individual capacity, Plaintiff's claims fail as a matter of law, as established in the analysis that follows.

injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978)). In her Complaint, Plaintiff states that she seeks to have the Court force WERDCC "to stop [integrating] offenders with repeated violent behavior into General Population or to send them to an institution better equipped to deal [with] their behavior." This request is one for injunctive relief to improve the conditions at WERDCC and, because Plaintiff was transferred to the Chillicothe Correctional Center and is no longer an inmate at WERDCC, her claims for injunctive relief are now moot.[5]

C.  Claims Against Defendant Beall and Defendant Hurley

Defendants also maintain that neither Defendant William Beall nor Defendant James Hurley are proper defendants in this case, as neither had personal involvement in the decision to release Oliveri Jones from administrative segregation and neither can be held liable under the doctrine of respondeat superior.[6] The Eighth Circuit has established that "general responsibility

---

[5]It appears as though Plaintiff intended to make a capable of repetition yet evading review argument when she noted in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgement that, "[w]hile Plaintiff's claim may be moot, Offender Oliveri Jones has requested in the past a transfer to the Chillicothe Correctional Center . . . , thus preserving the probability that the circumstances giving rise to this action may be reenacted in Chillicothe." If so, her argument must be denied, as the doctrine is not to be applied unless "there is a reasonable expectation the complaining party will be subject to the same action again." *Randolph v. Rodgers*, 170 F.3d 850, 856 n.7 (8th Cir. 1999). In this case, the possibility that Ms. Jones would be transferred to Chillicothe or that Plaintiff would be transferred back to WERDCC is slim. Further, it does not appear as though Ms. Jones has even requested a transfer since August 2006. Even if a transfer were to occur, it is even more unlikely that Ms. Jones would be placed in the same room as Plaintiff and given the opportunity to pour urine or other waste on Plaintiff. Thus, it cannot be said that there is a "reasonable expectation" that the event will occur again.

[6]Plaintiff apparently conceded this issue in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, by stating, "[w]hile Defendants Hurley and Beall may be entitled to summary judgment, Defendants Prudden [sic] and Pearl are still liable to the

for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (citing *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983)). Neither Defendant William Beall nor Defendant James Hurley were involved in any capacity in the decision to release Ms. Jones from administrative segregation. Plaintiff has not demonstrated any basis of liability for Defendants Beall and Hurley, other than general supervisory responsibility. Thus, neither of these Defendants can be held liable for the incident, in any capacity.

D. Failure to Protect

Defendants argue that they are entitled to summary judgment because Plaintiff is unable to establish that Defendants violated the Eighth Amendment by failing to protect her from violence at the hands of other inmates. The United States Supreme Court has established that "prison officials . . . must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). In order to establish a violation of the Eighth Amendment due to failure to protect, two requirements must be met: the deprivation, viewed objectively, must have been sufficiently serious and the prison official must have acted with deliberate indifference to the inmate's health or safety. *Id.* at 834. Each requirement will be addressed in turn.

    1.    *Sufficiently Serious?*

In order for a deprivation to be sufficiently serious, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting

---

Plaintiff." Because it is not entirely clear that Plaintiff intended to concede the issue, the Court will proceed with its analysis of the issue.

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In the specific context of a failure to protect claim, this means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The determination of whether there was a substantial risk of serious harm is an objective one. *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).

In this case, Plaintiff was not incarcerated under conditions that posed a substantial risk of serious harm. Prior to the date on which Oliveri Jones was placed in a cell with Plaintiff, Ms. Jones had not had received any type of conduct violation for one and a half years. Thus, although Ms. Jones had engaged in improper behavior involving water, urine, and feces in the past, her good behavior for a lengthy period of time significantly reduced the risk that she would engage in such behavior again. In addition, prior to being released from administrative segregation, Ms. Jones was acting in a responsible fashion and was showing good adjustment. This type of conduct was directly contrary to the manner in which Ms. Jones conducted herself prior to being placed in administrative segregation. Together, these facts led the administrative segregation committee to approve Jones's release into the general population. This approval is further evidence that Ms. Jones was not a threat or risk to Plaintiff or any other inmate.

2.  *Deliberate Indifference?*

Even if Plaintiff was incarcerated under conditions that posed a substantial risk of serious harm, she still cannot avoid summary judgment. A failure to protect claim under the Eighth Amendment also requires proof that the prison official acted with deliberate indifference to the health or safety of the inmate. The Supreme Court has held that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Mere negligence is not sufficient to establish deliberate indifference. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). Rather, the prison official "must have recklessly disregarded a known, excessive risk of serious harm to [the inmate's] safety." *Id.* Whether or not the prison official acted with deliberate indifference is a subjective determination. *See Helling*, 509 U.S. at 36-37.

In this case, even if there were a substantial risk of serious harm to Plaintiff, Defendants did not act with deliberate indifference to the health or safety of Plaintiff. Other than prison records reflecting that Ms. Jones was involved in six similar incidents over the course of approximately ten years, Plaintiff has failed to offer any evidence that would suggest knowledge of the risk of harm on the part of prison officials. Although Ms. Jones had demonstrated problematic behavior in the past, she had shown good adjustment in administrative segregation, had not received any conduct violations for a year and a half, and had not made any threats against Plaintiff or any other inmate. The mere fact that an inmate has a history of disobedience is not sufficient to establish knowledge of a present risk of harm, especially when coupled with evidence that the inmate had improved his or her behavior and had seemingly changed his or her ways. *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Thus, it cannot be said that Defendant Pruden or Defendant Pearl acted with deliberate indifference to the health or safety of Plaintiff.

## V.     CONCLUSION

Plaintiff sued Defendants for both monetary damages and injunctive relief.  If a defendant is not specifically sued in his or her individual capacity, courts conclude that the suit is against the defendant in his or her official capacity only.[7]  Plaintiff's claims for monetary damages against Defendants in their official capacity are barred by the Eleventh Amendment.  Plaintiff's claims for injunctive relief against Defendants are moot, as Plaintiff is no longer an inmate at WERDCC.  Plaintiff's claims for monetary relief against Defendant William Beall and Defendant James Hurley must fail, as neither party had personal involvement in the decision to release Oliveri Jones from administrative segregation.  Further, Plaintiff has failed to demonstrate that there was a substantial risk of serious harm and that the Defendants were deliberately indifferent to that risk.  As a result, Plaintiff's failure to protect claim must fail.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #21] is **GRANTED**.  Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

Dated this 12th Day of January, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[7] Even assuming that Plaintiff had named Defendants in their individual capacity, which she did not, her claims against Defendants still fail.